UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MAHMOUD ALBAYATI,<br>    Plaintiff<br><br>v.<br><br>ISYNERGY INC. D/B/A FINISH LINE AUTO<br>    Defendant | ) CIVIL ACTION NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>) JUNE 12, 2017 |

# COMPLAINT

## I. INTRODUCTION

1. This is an action brought by a consumer against an automobile dealership for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.,* the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.,* and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*

## II. PARTIES

2. Plaintiff, Mahmoud Albayati, is a consumer residing in Middletown, Connecticut.

3. Defendant, Isynergy Inc. d/b/a Finish Line Auto ("Finish Line Auto"), is a Connecticut corporation and is licensed to operate an automobile dealership in Wallingford, Connecticut.

## III. JURISDICTION

4. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1640, 15 U.S.C. § 1679g, 28 U.S.C. § 1331, and Fed. R. Civ. P. 18(a).

5. This Court has jurisdiction over Finish Line Auto because it is located in Connecticut and is organized under Connecticut law.

6. Venue in this Court is proper because all of the parties are located in this state and the transaction occurred in this state.

## IV. FACTUAL ALLEGATIONS

7. Prior to May 15, 2017, Finish Line Auto advertised on its website a 2013 Acura TL (the "First Vehicle") for a price of $19,530.

8. Also prior to May 15, 2017, Finish Line Auto advertised on its website a 2014 Honda Accord Sedan LX ("the Second Vehicle") for a price of $14,895.

9. Plaintiff was interested in purchasing a vehicle for his son, and he went to Finish Line Auto to see the First Vehicle on May 15, 2017.

10. Plaintiff agreed to purchase the First Vehicle and he paid a down payment of $3,000 to Finish Line Auto.

11. Finish Line Auto prepared a Purchase Order that listed a cash sale price of $20,999, or $1,469 more than the advertised price.

12. Plaintiff financed a balance of $21,982.00 pursuant to a retail installment contract (the "First Contract") that was assigned by Finish Line Auto to Ally Bank.

13. The First Contract included a charge of $3,000 for a service contract, even though Plaintiff neither requested nor desired this contract.

14. Finish Line Auto told Plaintiff that he was required to purchase the service contract as a condition of financing.

15. On the same date, May15, 2017, Plaintiff also agreed to purchase the Second Vehicle from Finish Line Auto.

16. Finish Line Auto prepared a Retail Purchase Order that listed a cash price of $16,299, not including taxes and fees, an amount that was $1,404 more than the advertised price.

17. The Retail Purchase Order also listed a cash down payment of $200 even though Plaintiff did not pay a down payment for the Second Vehicle to Finish Line Auto.

18. Although the Purchase Order and the Contract reflected a stated cash price of $16,299, the effective cash price of the Second Vehicle, once the false $200 down payment is subtracted, was only $16,099.

19. The sales tax in the transaction was calculated based upon the stated cash price of $16,299, resulting in an increase to the sales tax of $12.70.

20. Plaintiff financed the balance of $20,294.66 pursuant to a retail installment contract (the "Second Contract") that was assigned by Finish Line Auto to Capital One Auto Finance.

21. The Contract included a charge of $2,000 for a service contract, even though Plaintiff neither requested or desire the service contract.

22. Finish Line Auto told Plaintiff that he was required to purchase the service contract as a condition of financing.

23. Shortly after purchasing the Second Vehicle, Plaintiff returned to Finish Line Auto and sought to return it.

24. Plaintiff selected a 2014 Acura TL ("the Third Vehicle"), which Finish Line Auto had advertised on its website for a price of $20,495.

25. Finish Line Auto prepared a Retail Purchase Order that listed a cash sale price of $26,696.00 for the Third Vehicle, an amount that was $6,201 more than the advertised price.

26. The Retail Purchase Order also listed a cash down payment of $7,000 when Plaintiff had paid $5,000 as a down payment.

27. Although the Purchase Order reflected a stated cash price of $26,696, the effective cash price of the Second Vehicle, once the false $2,000 down payment is subtracted, was only $24,696.

28. The sales tax in the transaction was calculated based upon the stated cash price of $26,696, resulting in an increase to the sales tax of $127.00.

29. Finish Line Auto also prepared a Retail Installment Contract (the "Third Contract") for the Third Vehicle that listed a false down payment of $7,000.

30. Plaintiff financed a balance of $22,556.72 pursuant to the Third Contract that was assigned by Finish Line Auto to TD Auto Finance LLC.

31. The Third Contract included a charge of $895 for a GAP contract, even though Plaintiff neither requested nor desired the contract.

32. The GAP contract listed a purchase price for the Third Vehicle of $27,300.

33. Plaintiff believes, and therefore alleges, that Finish Line Auto provided false information to TD Auto Finance regarding the optional equipment that was included on the Vehicle in order to deceive TD Auto Finance into believing that the Vehicle was worth more than its actual value. Plaintiff bases this allegation upon the frequency of this practice, known as "powerbooking", in the automotive industry and upon the fact

that the contract listed an NADA value of $27,300 even though Vehicle was advertised at a price of $20,495 and had a NADA Retail Value of approximately the same amount.

## V.  CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT (FIRST CONTRACT)

43. Finish Line Auto violated TILA in connection with the First Contract by including the cost of the service contract as part of the amount financed and failing to disclose that cost as a part of the finance charge.

44. Finish Line Auto is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### B.  TRUTH IN LENDING ACT (SECOND CONTRACT)

45. Finish Line Auto violated TILA and Regulation Z in connection with the Second Contract by listing a false down payment on the Second Contract.

46. The increased portion of the sales tax should have been included in the finance charge and included in the annual percentage rate of interest calculation, because the excess sales tax was an additional cost to Plaintiff imposed by Finish Line Auto as a condition of financing, and it would not have been charged in a comparable cash purchase.

47. Finish Line Auto further violated TILA in connection with the Second Contract by including the cost of the service contract as part of the amount financed and failing to disclose that cost as a part of the finance charge.

48. Finish Line Auto is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### C. TRUTH IN LENDING ACT (THIRD CONTRACT)

49. Finish Line Auto violated TILA in connection with the Third Contract by listing a false down payment of $7,000 even though Plaintiff had only paid $5,000.

50. The increased portion of the sales tax should have been included in the finance charge and included in the annual percentage rate of interest calculation, because the excess sales tax was an additional cost to Plaintiff imposed by Finish Line Auto as a condition of financing, and it would not have been charged in a comparable cash purchase.

51. Finish Line Auto is liable to Plaintiff for actual damages plus additional statutory damages of $2,000 and attorney's fees and costs.

### D. CREDIT REPAIR ORGANIZATIONS ACT (THIRD VEHICLE)

52. By providing false information to TD Auto Finance in connection with Plaintiff's credit application, Finish Line Auto violated the CROA, 15 U.S.C. § 1679b(a)(1), which prohibits any person from making any statement that is untrue or misleading with respect to any consumer's credit worthiness, credit standing, or credit capacity to any person to whom the consumer has applied or is applying for an extension of credit.

53. Finish Line Auto is liable to Plaintiff for damages, punitive damages, and attorney's fees pursuant to 15 U.S.C. § 1679g.

### E. CONNECTICUT UNFAIR TRADE PRACTICES ACT

54. Finish Line Auto violated CUTPA in the following ways:

    a. The violations of TILA as aforesaid;

b.  It sold the First Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

c.  It sold the Second Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

d.  It falsely stated that Plaintiff paid a $200 down payment for the Second Vehicle even though the Plaintiff had not paid a down payment;

e.  It sold the Third Vehicle for more than the advertised price, a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(1), which prohibits dealerships from failing to sell vehicles for the advertised price;

f.  It falsely stated that Plaintiff paid a $7,000 down payment even though only $5,000 was paid;

g.  It required Plaintiff to purchase service contacts as a condition of financing the First Vehicle and the Second Vehicle;

h.  It charged Plaintiff for GAP when he had not requested and did not desire GAP; and

i.  Upon information and belief, it provided false information to the lender about the Vehicle's options to induce it to accept assignment of the Third Contract.

55. Finish Line Auto's conduct, as aforedescribed, was deceptive and unfair and in violation of CUTPA, and it has caused Plaintiff to suffer ascertainable losses and damages in that he paid more than the advertised prices for the vehicles, he paid higher sales tax charges, he purchased add-on products that he did not need or desire, and he paid additional finance charges on all of the foregoing amounts.

56. Finish Line Auto is liable to the Plaintiff for his actual damages plus punitive damages and a reasonable attorney's fee and costs.

Wherefore, Plaintiffs claim actual damages, statutory damages of $2,000 for each contract; punitive damage, and attorney's fees and costs.

            PLAINTIFF, MAHMOUD ALBAYATI,

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn (ct02188)
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd. Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax (860) 571-7457